UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT PAGE, an individual,

        Plaintiff,

v.    Case No. 1:24-CV
    Hon.:

DWELLING PLACE OF GRAND RAPIDS
NON PROFIT HOUSING CORPORATION,
d/b/a DWELLING PLACE
a domestic non-profit corporation

        Defendant.

| | |
|---|---|
| William F. Piper (P38636)<br>William F. Piper, P.L.C.<br>***Attorney for Plaintiff***<br>9848 Portage Rd.<br>Portage, MI 49002<br>Phone: 269.321.5008<br>Fax: 269.321.5009<br>Email: wpiper@wpiperlaw.com | |

## **COMPLAINT**

The plaintiff, Scott Page, by and through his attorney, William F. Piper, PLC, for his complaint, states as follows:

### **JURISDICTIONAL ALLEGATIONS**

1.    The plaintiff Scott Page, resides in the City of Rockford, County of Kent, State of Michigan, and he resided therein at all times relevant to this complaint.

2.    The defendant, Dwelling Place of Grand Rapids Non-Profit Housing Corporation, d/b/a Dwelling Place of Grand Rapids (herein Dwelling Place), is a non-profit corporation that did business in the County of Kent at all times relevant to this complaint.

3. This lawsuit arises out of the plaintiff's employment by the defendant and its termination of his employment by it on January 5, 2024.

4. This lawsuit arises in part under Title VII of the Civil Rights Act of 1964, as amended, 42 USC §1981, and 42 USC §1981a.

5. Jurisdiction arises under 28 USC § 1331 and 28 USC § 1343.

6. Certain claims in this action arose under this court's supplemental jurisdiction to hear and decide state law claims arising out of the transactions and occurrences as the federal law claims.

7. The Equal Employment Opportunity Commission issued a Right to sue letter to Mr. Page dated July 2, 2024.

## **COMMON ALLEGATIONS**

8. The plaintiff restates and realleges as though fully set forth herein paragraphs 1 through 7 of this complaint.

9. The defendant hired Mr. Page, who is a white man, to work for it in November 1993 and on or about 1999 was promoted as its Director of Facilities Management.

10. At all times that he worked for the defendant Mr. Page did a good job for it, and his duties and responsibilities increased greatly.

11. The defendant hired a new CEO- Jeremy Deroo- in 2021.

12. The defendant then terminated or forced out many white persons, some of whom had opposed Mr. Deroo's methods and practices, from approximately January 2022 through December 2023.

13. The defendant then promoted Felicia Rodriguez, a Hispanic female, who had been having documented performance issues, to the position of Chief Operating Officer.

14. The defendant criticized Mr. Page for not applauding loudly enough when Ms. Rodriguez was promoted, and it told him that the applause was divided along racial lines.

15. Mr. Page complained to the defendant about being called racist when that was not true.

16. Not surprisingly Ms. Rodriguez developed problems pertaining to her job as the COO.

17. In May 2023 Mr. Deroo told Mr. Page that Ms. Rodriguez was overwhelmed.

18. Mr. Deroo directed Mr. Page to take over a large portion of Ms. Rodriguez's workload, including IT, security, and other duties.

19. In July and August 2023 many staff members of the defendant told Mr. Page that they had heard or suspected, or both, that Mr. Deroo and Ms. Rodriguez were having an affair, and they felt uncomfortable about it.

20. On or about September 2023, Mr. Page, as part of a performance review of Mr. Deroo, indicated in a meeting with board members that he did not feel comfortable stating anything negative about Mr. Deroo, for fear of losing his job and health insurance.

21. One of the board members told Mr. Page that the information he provided would be confidential and that he would not be retaliated against for providing it.

22. Mr. Page, still concerned about his job security, then indicated that he had concerns about Mr. Deroo's excessive spending and how he operated the defendant.

23. In October 2023, Mr. Deroo announced that Ms. Rodriguez needed a month off to recover from a difficult past month, and she would not be back until November.

24. Also in October 2023, a staff member and outside vendors told Mr. Page that Mr. Deroo was in the process of divorcing his wife. They also indicated that the reason Ms.

3

Rodriguez was taking a month off from work was to deal with stress relating to from a medical procedure that was related to her relationship with Mr. Deroo.

25. Concerned for the organization, and that Ms. Rodriguez had possibly been sexually harassed or pressured by Mr. Deroo, Mr. Page reported this possible sexual harassment to a board member of the defendant in October 2023.

26. In November 2023 the board member told Mr. Page that the defendant had enough evidence to investigate Mr. Page's sexual harassment complaint, and he asked Mr. Page to participate in an investigation by a law firm regarding the issue.

27. Thereafter, it appeared that Ms. Rodriguez and others were attempting to gain access to Mr. Page's cell phone records, and she pressured other employees and a contractor named Terry to do so.

28. Mr. Page reported this retaliation to the board member he had talked to earlier.

29. Mr. Page then assumed his work phone number and cell phone contract from the Dwelling Place account and added it to his personal account in order to protect his privacy.

30. On December 19, 2023, the aforementioned board member called Mr. Page and told him that the allegations about Mr. Deroo could not be substantiated. He also told Mr. Page that he could not be retaliated against for providing information or a statement to the lawyer. Mr. Page received a follow-up letter to that effect.

31. After Mr. Page received the letter, he was not scheduled to return to the office because of the holidays until January 5, 2024.

32. On January 5, 2024, after he had been in his office for two hours, Mr. Page was called into an office and told by a human resources employee that he was being suspended without

pay pending an investigation into a "frustrating conversation" he allegedly had with a co-worker.

33. The human resources employee demanded Mr. Page's personal cell phone, and she told him she would call the cops if he did not give it to her.

34. The defendant then went into Mr. Page's office and confiscated his laptop.

35. At the time this was happening, the human resources employee was texting Felicia Rodriguez.

36. Attorney Jeff Frazier of the Miller Johnson law firm called Mr. Page and told him that he was suspended without pay and that he could not use any of his paid time off during the suspension without pay.

37. Figuring that he had actually been terminated, Mr. Page texted the board member and explained that he believed that he had been retaliated against.

38. Later that day, Mr. Page received a pop-up message on his cell phone requesting that he allow an iTunes/iCloud account to gain access to his cell phone, which request Mr. Page denied.

39. Mr. Page received a message from an Amazon driver that indicated that people were accessing his personal data and accounts.

40. At around 4:00 p.m. that day Mr. Page reported to lawyer Jeff Frazier of the defendant that someone was unlawfully accessing his personal accounts.

41. Mr. Page also noticed that his son's iTunes account was now on his cell phone, and he could not make any changes to his app.

42. The contractor named Terry the defendant used then told Mr. Page that Felicia Rodriguez had told him to put Mr. Page's son's iTunes account onto Mr. Pages's phone.

5

43. The contractor Terry told Mr. Page that by using Mr. Page's old Dwelling Place email address, he was also able to override his denial of actions and allow them to access Mr. Page's son's iCloud account and access Mr. Page's phone and iPhone apps.

44. The contractor Terry also admitted that Ms. Rodriguez would not allow him to clear his personal data from his laptop and that Ms. Rodriguez wanted full access to Mr. Page's laptop.

45. Mr. Page then noticed that his personal email account and many emails regarding wrongdoings at Dwelling Place had been deleted. Mr. Page then reported his concerns to Mr. Deroo and Mr. Frazier.

46. The contractor admitted that it was wrong to consult cyber crimes against Mr. Page, but he explained that he did it to protect his job.

47. Because he had been terminated, Mr. Page filed for unemployment benefits.

48. The defendant gave a false reason for denying him unemployment benefits.

49. On April 8, 2024 the defendant sent Mr. Page a letter claiming that he had voluntarily quit because he had refused to respond to a request from Mr. Frazier that he give another statement or a deposition.

50. Mr. Page had no duty to give a statement to the defendant after the defendant had terminated his employment on January 5, 2024 by suspending Mr. Page without pay and without access to paid personal time off.

51. As a result of the events described above, Including the wrongful termination and retaliation, Mr. Page has suffered and will continue to suffer a loss of income and benefits, emotional distress, a loss of enjoyment of life, and other damages.

**COUNT I – RACE DISCRIMINATION**

52. The plaintiff restates and realleges as though fully set forth herein paragraphs 1 through 51 of this complaint.

53. The defendant, between January and December 2023, terminated most of the former directors who had previously operated the organization. most of whom were white.

54. The defendant targeted Mr. Page because he did not outwardly approve the promoting of Mr. Rodriguez, and it, assumed that he opposed her because he is white and she is Hispanic.

55. The reasons the defendant used for terminating Mr. Page's employment was false and pretextual.

56. As a result of the discrimination described above, Mr. Page's employment was terminated, causing him to suffer and continue to suffer the damages described above.

57. This claim is actionable under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, 42 U.S.C. §1981a, and the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

WHEREFORE, the plaintiff Scott Page requests a judgment against the defendant that includes appropriate equitable relief, including reinstatement or front pay, appropriate legal relief, including compensation for his loss of income and benefits (both past and future), compensation for all non-economic damages past and future, punitive damages, all recoverable interest, costs, attorney's fees under 42 USC §1988 and under state law, and all other relief this court deems fair and just.

**COUNT II – RETALIATION**

58. The plaintiff restates and realleges as though fully set forth herein paragraphs 1 through 57 of this complaint.

59. The defendant terminated Mr. Page's employment because he had reported sexual harassment and discrimination and participated in an investigation of sexual harassment.

60. As a result of the wrongful termination Mr. Page has suffered and will continue to suffer the damages described above.

61. This claim is actionable under Title VII of the Civil Rights Act of 1964, as amended, 42 USC §1981, 42 USC § 1981a, and the Elliott-Larsen Civil Rights Act, MCL 37.2701.

WHEREFORE, the plaintiff Scott Page requests a judgment against the defendant that includes appropriate equitable relief, including reinstatement or front pay, appropriate legal relief, including compensation for his loss of income and benefits past and future, compensation for all non-economic damages past and future, punitive damages, all recoverable interest, costs, attorney's fees under 42 USC §1988 and under state law, and all other relief this court deems fair and just.

### COUNT III – INTRUSION UPON SECLUSION- BREACH OF PRIVACY

62. The plaintiff restates and realleges, as though fully set forth herein, paragraphs 1 through 61 of this complaint.

63. As stated above the defendant improperly intruded upon the plaintiff's private cell phone information, accounts, and apps.

64. The defendant also improperly deleted information Mr. Page had on his phone.

65. The plaintiff did not give, and expressly denied, the defendant permission to do this.

66. As a result of this improper intrusion Mr. Page has suffered and will continue to suffer the damages set forth above.

WHEREFORE, the plaintiff Scott Page requests a judgment against the defendant that includes compensation for all non-economic damages past and future, and all recoverable interest, costs, attorney's fees and all other relief this court deems fair and just.

Dated: September 25, 2024                    WILLIAM F. PIPER, PLC.
                                                                                     Attorney for Plaintiff

                                                                      By:     */s/ William F. Piper*
                                                                               William F. Piper (P38636)
                                                            BUSINESS ADDRESS:
                                                                               9848 Portage Rd.
                                                                               Portage, Michigan 49002
                                                                               Phone: 269.321.5008
                                                                               Fax: 269.321.5009